IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAGE REDWIND,                                                      Civ. No. 3:14-cv-01699-AC

        Plaintiff,                                              OPINION & ORDER

    v.

WESTERN UNION, LLC,

        Defendants.

**ACOSTA, Magistrate Judge:**

The parties' briefing of the issues raised in Western Union's Motion (ECF No. 95) for
Summary Judgment contains numerous objections to the evidence each side submits to support their
respective position. In addition, Redwind raised objections through a separate Motion (ECF No.
156) to Strike Evidence. Before ruling on the merits of Western Union's summary judgment
arguments, the court must determine the scope of the evidentiary record on summary judgment. The
court will first consider Western Union's objections, and thereafter analyze Redwind's objections,
thereby resolving all objections the parties have raised in connection with the summary judgment

FINDINGS & RECOMMENDATION - 1                                                              [RMD]

motion and in Redwind's separate motion to strike.  The court's summary judgment rulings will be filed separately.

I.  Western Union's Objections.

Western Union raises objections to portions of the Redwind Declaration, as well as the exhibits attached to the declaration.  Specifically, Western Union moves to strike all or part of twenty-eight paragraphs of the Redwind Declaration.  Western Union also moves to strike all or part of Exhibits 1, 2, 4, 5, 8-23, 25-28, 32, 33, 35-45, 48-78, 79, and 80 to the Redwind Declaration.

Rule 56 provides that, on summary judgment, a party may object to the opponent's evidence based on the contention that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  When faced with such an objection, the court does "not focus on the admissibility of the evidence's form." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Instead, the court should "focus on the admissibility of its contents." *Id.* (quoting *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001)).  However, the proponent of the challenged evidence "bears the burden of proof of admissibility," and must adequately develop the factual record to show the challenge evidence could be presented in admissible form at trial. *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002).

A.  *Grounds for Objections.*

Redwind argues the court should deny Western Union's objections because it failed to confer in good faith as required by Local Rules 7-1 and 56-1.  Under LR 7-1, a movant must confer with the opposing party prior to filing any motion.  LR 7-1(a).  Local Rule 56-1 confirms that evidentiary objections raised in a response or reply memorandum are subject to the conferral requirement.  L.R. 56-1(b).  Redwind contends Western Union failed to confer before raising its evidentiary motions

in its Reply.  However, Exhibit 1 to Redwind's Declaration in Plaintiff's Response in Opposition to Defendant's Evidentiary Objections ("Redwind Evidentiary Declaration") is an email exchange between Redwind and Western Union's counsel conferring about Western Union's evidentiary objections.  Therefore, Redwind's own evidence undermines her argument.  To the extent Redwind argues the conferral evidenced in Redwind Evidentiary Declaration Exhibit 1 was not in good faith, Redwind introduced no evidence to support her argument.  Because there is no evidence Western Union conferred in bad faith, the court will not deny Western Union's objections for failure to confer pursuant to LR 7-1.

Redwind next argues that, to the extent Western Union conferred in good faith, they failed to state their objections in sufficient detail.  She argues Western Union "failed to discuss the alleged inadequacy at all." (Evidentiary Resp. at 1.)  However, in the conferral email featured in Exhibit 1, defense counsel sent Redwind a twelve-and-one-half page chart articulating the objectionable material and the grounds for Western Union's evidentiary objection.  Therefore, the court will not deny Western Union's objections on this ground.

The court now turns to each of Western Union's paragraph-specific arguments in which Western Union asserts one or more of the following grounds.

      1.  Relevance.

Evidence is "relevant" under the Federal Rules of Evidence ("Rules") where it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401.  Relevant evidence is admissible unless another law provides otherwise, and irrelevant evidence is inadmissible." FED. R. EVID. 402.

"Relevance is a fairly coarse filter, and when evidence is minimally relevant, it is likely to be minimally probative as well." *U.S. v. Wiggan*, 700 F.3d 1204, 1213 (9th Cir. 2012). In analyzing the relevancy of evidence, trial courts "have a wide latitude in excluding evidence of remote relevance. *Cal-Bay Corp. v. U.S.*, 169 F.2d 15, 24 (9th Cir. 1948). Moreover, Rule 403 provides that relevant evidence is inadmissible where "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

2. Authentication and Personal Knowledge.

For evidence to be admissible in federal court, the proponent of that evidence must "lay the foundation" for that evidence. With regard to witness testimony, the primary means of laying the foundation is introducing evidence that the witness has "personal knowledge" of the matters to which he or she testifies. FED. R. EVID. 602.

> A witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

*Id*.

A proponent lays the foundation to introduce documents by "authenticating" those documents. FED. R. EVID. 901(a). "Authentication is a 'condition precedent to admissibility . . . .'" *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Evidence is authenticated where the proponent produces "evidence sufficient to support a finding that the matter in question is what its proponent says it is." *Id*.; FED. R. EVID. 901(a).

\ \ \ \ \

\ \ \ \ \

FINDINGS & RECOMMENDATION - 4                                         [RMD]

3. Opinion, Conclusory, Speculative, or Conjectural Testimony.

Although expert witnesses may testify in the form of opinions, lay-witnesses lacking specialized knowledge may testify in the form of opinion under very limited circumstances. FED. R. EVID. 701. A lay-witness may offer opinion testimony where that testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.*

A natural extension of the rule against lay-witness opinion testimony is the rule that lay-witnesses may not give testimony in the form of conclusions or that is speculative. *Hund-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 928 (9th Cir. 1980), *reh'g denied* September 29, 1980. As a result, affidavit or declaration testimony that are "speculative, conclusory, and unqualified opinion testimony," or testimony which contains argumentative legal conclusions, is inadmissible. *Id. See also Melendez v. Morrow County Sch. Dist.*, Civ. No. 07-875-AC, 2009 WL 4015426, at *9 (D. Or. Nov. 19, 2009) ("To the extent that the evidentiary material submitted by either party is speculative or represents a legal conclusion, the court, as a matter of course, will not factor that material into the decision.); *Burch v. Regents of the Univ. Of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgments.")

Where the witness's opinion testimony is based on specialized knowledge, the witness can give opinion testimony only if the proponent qualifies the witness as an "expert" under Rule 702.

Under Rule 702, opinion testimony is admissible where the witness is "qualified as an expert by knowledge, skill, experience, training, or education" and:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

### 4. Best Evidence Rule.

Where a proponent intends to prove the contents of a document, the document itself is the best evidence of that content. FED. R. EVID. 1002. Typically, courts apply the best evidence rule to require a proponent to produce the original document. *U.S. v. Bennett*, 363 F.3d 647, 953 (9th Cir. 2004). However, courts also apply the rule to bar a witness from testifying to the contents of the document, and instead require the proponent to actually produce the document. *Id*. Therefore, the court should exclude all testimony by a declarant who seeks to prove the contents of a document. *Id*.

### 5. "Sham" Testimony.

The general rule in the Ninth Circuit is that a party cannot manufacture a genuine issue of fact, and thereby avoid summary judgment, by submitting an affidavit which contradicts prior sworn testimony. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment

as a procedure for screening out sham issues of fact." *Id*.  Because of the jury's role in resolving

questions of credibility, courts have urged caution when applying the sham affidavit rule. *Id., citing*

*Kennet Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980).  To this end, the Ninth Circuit

requires the district court to make certain factual findings before striking a declaration as a sham.

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  First, the court must find that

the affidavit is sham, or created specifically to avoid summary judgment; and second, that the

inconsistency between the prior sworn testimony and the declaration is "clear and unambiguous."

*Id.*

      6.  Hearsay.

The Federal Rules of Evidence define "hearsay" as an out of court statement introduced to

"prove the truth of the matter asserted in the statement."  FED. R. EVID. 801(c).  Unless a statute,

federal rule of evidence, or other rule "prescribed by the Supreme Court" provides otherwise, hearsay

is not admissible in federal court. FED. R. EVID. 802.  Several hearsay exclusions and exceptions are

relevant to the court's analysis on the parties evidentiary motions.

      a.  Statements by the Party-Opponent.

Rule 801 articulates that, among the types of statements that "are not hearsay" are statements

made by the opposing party or the opposing party's agent within the scope of their agency.  FED. R.

EVID. 801(d)(2).  Under that rule, a statement offered against an opposing party is admissible if it:

    (A) was made by the party in an individual or representative capacity;

    (B) is one the party manifested that it adopted or believed to be true;

    (C) was made by a person whom the party authorized to make a statement on the
        subject;

> (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or
>
> (E) was made by the party's coconspirator during and in furtherance of the conspiracy.

FED. R. EVID. 801(d)(2). A hearsay statement, without more, does not "establish the declarant's authority under (C); the existence or scope of the relationship under (D); or the existence of the conspiracy or participation in it under (E)." *Id*. When invoking subsection (D), the burden lies with the proponent to prove that the statement was: (1) made by an agent or representative; (2) during the employment or existence of the agency; (3) concerning a matter within the scope of the relationship. *Id*.

Here, the record contains significant evidence of an agency relationship between Western Union, as the employer, and Randall Acocelli, Craig Pinnegar, Carla Anthony, Marcus McCarty, and Luis Felipe Rodriguez Vega, as its employees, and Western Union does not contend those individuals acted outside the scope of their employment at any time relevant to this case. Therefore, all evidence of those individuals' out-of-court statements is not hearsay under Rule 801(d)(2) because it constitutes a statement by a party opponent. Moreover, on summary judgment, the court is concerned with content and not form. To the extent the record contains out-of-court statements by other alleged Western Union employees, Redwind may qualify those statements for admission at trial by soliciting testimony from those individuals regarding their employment relationship with Western Union and the scope of that relationship. Finally, Western Union does not dispute that the logo featured throughout the record, and containing the words "Western Union" is in fact the Defendant's logo and trademark. The appearance of that logo on documents in the record is evidence that the document was issued or authorized by the Defendant. Therefore, any document

featuring the Western Union logo constitutes a statement by Western Union and is admissible under Rule 801(d)(2). To the extent Redwind raises other hearsay exceptions, the court will specifically address them below.

   *B. Objections to Declaration Testimony.*

   Western Union moves to strike all or part of forty-four paragraphs from Redwind's Declaration in support of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment. The court will address each in turn.

   1. Western Union moves to strike ¶ 3 in its entirety for lack of foundation, lack of personal knowledge, and hearsay. However, ¶ 3 merely states that the exhibits attached to Redwind's declaration are true and correct copies. Beyond stating the grounds of its objection in conclusory fashion, Western Union does not explain why ¶ 3 is inadmissible based on those objections. Unless a defendant's objection clearly applies upon first inspection, the court will not parse the minutia of Western Union's non-specific argument. Because it failed to carry its burden on this objection, the court overrules Western Union's objection to ¶ 3.

   2. Western Union moves to strike the following excerpt from ¶ 5: "When the defendant chose to hire me, they clearly agreed that I was qualified for the position and thus, cannot have a defense which questions whether or not I was qualified and further, it would be after-acquired." The court sustains Western Union's objection. First, Redwind does not have personal knowledge of the thought processes of those who hired her. Second, Redwind's statement is conclusory, speculative, and conjectural. Third, even if the Redwind's proposed inference is reasonable, Redwind's statement is not a verifiable fact, but an inferential argument not suitable for inclusion in a declaration. Therefore, this portion of ¶ 5 is stricken.

3.   Western Union moves to exclude the following portion of ¶ 8: "The defendant did not produce Plaintiff's job description document during discovery." Western Union argues the statement is misleading and unsupported by testimony or other evidence. The court will strike this section for three reasons. First, it is irrelevant, as Western Union's conduct during discovery is not probative of the parties' claims or defenses in this case. Moreover, to the extent this excerpt is probative, its probative value is significantly outweighed by its likely prejudicial effect. Finally, Redwind does not sufficiently lay an evidentiary foundation for her assertion. Therefore, the first sentence of ¶ 8 is stricken.

4.   Western Union moves to exclude the portion of ¶ 9 beginning with "[a]ccording to dictionary.com . . . " and ending with "living in the Caucus region to date." The court sustains Western Union's motion, as this portion of Redwind's declaration lacks evidentiary foundation. Not included in the record is evidence or testimony to support Redwind's assertions. Moreover, the first portion of this excerpt is hearsay introduced to show the definition of the word "Caucasian." Redwind does not justify introducing this hearsay with an alternative purpose or an exception to the hearsay rule. Therefore, this objection is sustained.

5.   Western Union objects to the following portion of ¶ 9 as non-expert opinion testimony and because it is argumentative: "Which are they claiming Mr. Eldridge belongs to? The defendant is relying upon hearsay and not facts as Mr. Eldridge is not a witness nor has he made a declaration on behalf of the defendant that would specify his national origin, race or any elucidation upon his personal characteristics?" The court agrees with Western Union. This portion of ¶ 9 is argumentative and is more suitable for inclusion in a motion or memorandum in support. Therefore, it is stricken from Redwind's declaration and the court will not consider it.

FINDINGS & RECOMMENDATION - 10                                             [RMD]

6.   Western union moves to exclude the following portions of ¶ 10:  From "I have never received the 'highest rating' . . . " to " . . . but only 'Exceeds' (not the highest rating[)];" and "I am the highest performer according to raw data."  Western Union contends these statements are hearsay and violate the best evidence rule.  The court disagrees that these statements are inadmissible under the best evidence rule, as Redwind is not directly describing the contents of a document.  Instead, she is describing the results of her evaluation which was later memorialized in a document.  Western Union also does not carry its burden of demonstrating that these statements are hearsay.  To the extent Redwind is referring to out-of-court statements, those statements were made by Western Union and constitute admissions of a party opponent.  Thus, Western Union's sixth objection is overruled.

7.   Western Union moves to exclude the portion of ¶ 10 beginning with "[t]he nature of the dispute . . . " and ending with " . . . based on the facts in evidence."  Western Union argues this portion of the declaration is inadmissible non-expert opinion and is argumentative.  The court agrees.  The statement is best described as an attempt by Redwind to frame the issues relevant to the motion for summary judgment.  However, this attempt is not a verifiable fact, and is not appropriate for inclusion in a declaration.  Instead, it is argument Redwind should have included in her brief.  Therefore, this is argumentative, and will be excluded.  To the extent this is not argument, the court agrees with Western Union that this statement constitutes non-expert opinion and should be excluded.

8 & 9.   Western Union moves to exclude ¶ 11 in its entirety as hearsay and for violation of the Best Evidence Rule.  The court agrees in part.  Paragraph 11 attests that Exhibit 4 is a true and accurate copy of the Western Union Code of Conduct.  Paragraph 11 also contains a quote from that

FINDINGS & RECOMMENDATION - 11                                    [RMD]

code of conduct and Redwind's observation that the code of conduct does not permit managers to use their discretion in rewarding employees for their performance. Because the first portion of ¶ 11 quotes the code of conduct, it violates the best evidence rule. Further, the bracketed portion of ¶ 11 constitutes an inference Redwind draws from the language of the Code of Conduct. This statement is argumentative. Therefore, the first sentence of ¶ 11 is stricken.

However, the court will not exclude the second clause of ¶ 11 which states: "Exhibit 4 is a true and correct copy of the Code of Conduct copy I have in my possession from Western Union's internal website, the Wire." (Ex. 4, p. 18.) This is not hearsay, and does not violate the Best Evidence Rule. Therefore, the court will grant in part this evidentiary objection and strike from ¶ 11 the following: "Western Union's Code of Conduct states that employees are 'recognized and competitively rewarded for their performance based on merit', [meaning, not discretion] . . . ."

10-12. Western Union moves to strike portions of ¶ 12. First, it argues the word "withheld" should be stricken from the following: "the defendant has withheld merit increase range guidelines that applied to year-end review of year 2012 through 2015 periods." Western Union argues Redwind lacks personal knowledge, and that it is conclusory, conjectural, or speculative. The court agrees. By using the word "withheld," Redwind is asserting that such a document exists, but that Western Union is not producing it. This is conclusory, conjectural, and speculative. Moreover, this statement is not probative of Redwind's claims or Western Union's defenses. Redwind is attempting to revive a discovery dispute which would be best addressed on a motion to compel. Finally, to the extent it is probative, its probative value is outweighed by the prejudicial effect it would have on Western Union.

\ \ \ \ \

FINDINGS & RECOMMENDATION - 12                                    [RMD]

Second, Western Union moves to exclude the following: "Mr. Pinnegar was not the decider of my merit increase, Randall Acocelli was." Western Union argues Redwind lacks personal knowledge as to this fact, and has not laid the foundation to make such an assertion. The court agrees. Redwind does not support her conclusion with deposition testimony by either Acocelli or Pinnegar explaining the organizational decision-making structure as it related to merit-increase decisions. Nor has Redwind introduced admissible exhibits which would do the same. Because Redwind failed to adequately lay the evidentiary foundation for her assertion, the court sustains Western Union's objection and strike this portion of ¶ 12.

Third, Western Union moves to strike the final two sentences of ¶ 12 which read: "The defendant claims they haven not discriminated in my merit pay increase but offered no evidence supporting that they paid me within the range or the guidelines that applied to the year in question. The defendant cannot use arguments about merit increase while also withholding evidence." Western Union argues this should be stricken as non-expert opinion testimony and argumentative. The court agrees. These two sentences do not contain verifiable facts, but are a continuation of Redwind's arguments in her Response. As such, they are not appropriate for inclusion in an evidentiary declaration. Thus, Western Union's objection is sustained.

13. Western Union moves to strike ¶ 13 in its entirety for lack of personal knowledge, because it is argumentative opinion, conclusory, and unsupported by testimony or other evidence. The court agrees in part. ¶ 13 reads in its entirety: "I was awarded the Outstanding Achievement Award in 2012 because of my merit from the year 2011 and not because of Mr. Pinnegar's discretion." The court will sustain in part this objection. Redwind has not laid the foundation, and lacks personal knowledge, regarding the following part of that paragraph: "because of my merit from

the year 2011 and <u>not</u> because of Mr. Pinnegar's discretion."  However, the fact Redwind received

the 2012 Outstanding Achievement Award is one of which Redwind has personal knowledge.

Therefore, the court overrules Western Union's objection with respect to "I was awarded the

Outstanding Achievement Award in 2012."  However, the court sustains this objection in part and

strikes the language "because of my merit from the year 2011 and <u>not</u> because of Mr. Pinnegar's

discretion."

15. Western Union's fourteenth objection moves to strike two portions from ¶ 14.  First, it

moves to exclude:  "According to the Tuition Reimbursement policy, I was an eligible candidate."

Second, it moves to exclude:  "Per the Tuition Reimbursement Policy, it is Mr. Pinnegar's obligation

as an employee of Western Union to approve the tuition for a qualified individual."  Western Union

argues these statements violate the Best Evidence Rule and are inadmissible hearsay.  The court

agrees.

With these statements, Redwind is attempting to prove the contents of the Tuition

Reimbursement Policy.  To prove the contents of that document by any means other than the policy

document itself is contrary to the Best Evidence Rule.  Therefore, these portions of ¶ 14 should be

excluded, and Western Union's fourteenth objection is sustained.

15. Western Union objects to the following portion of ¶ 15 for lack of personal knowledge,

lack of foundation, and because it constitutes hearsay:  "To my knowledge, Mr. Acocelli did not

personally write this recommendation letter; his secretary, Lilian Marin did . . . ."  However, the

basis of Western union's objections is not immediately apparent on the face of this excerpt, and

Western Union does not articulate how its objections apply to demonstrate this excerpt's

inadmissibility.  Therefore, this objection is overruled.

FINDINGS & RECOMMENDATION - 14                                                    [RMD]

16. Western Union objects to the following portion of ¶ 15 for lack of personal knowledge, and because it is argumentative, conclusory, speculative, and conjectural: "The recommendation letter Mr. Acocelli is referring to in his declaration Exhibit 1 is made to Portland State University (not to Marylhurst University) and was written BEFORE his retaliation and discrimination and BEFORE I reported him." Western Union does not meet its burden of explaining how their objections apply to the objected-to material. Accordingly, the court overrules this objection.

17. Western Union objects to following portion of ¶ 15 because it contends the material contained therein is irrelevant, conclusory, speculative, conjectural, and inadmissible lay-witness opinion testimony: "I did not use Mr. Acocelli's recommendation later due to fear of further retaliation and fear of him slandering me and jeopardizing my ability to get into an MBA program." The court overrules this objection. In this excerpt, Redwind is explaining her own motivations and mental impressions. Therefore, it is not argumentative, conclusory, conjectural, or speculative. Moreover, Western Union does not elaborate on how this evidence is irrelevant. Therefore, the court will overrule this objection and admit this excerpt of 15.

18. Western Union moves to exclude three portions of ¶ 16 for lack of personal knowledge and because they are conclusory, speculative, or conjectural. The court agrees. The first portion, from "Ms. Chen was at a higher position . . . " to " . . . since she lived in the San Francisco Area at the time" is excluded for lack of personal knowledge and lack of foundation. Redwind does not cite to testimony by Ms. Chen or to documents which support Redwind's factual assertion.

Second, Western Union moves to exclude the following: "She was referring to the shape of my nose." The court will exclude this portion of ¶ 16, as it is conclusory, speculative, and

conjectural. Redwind does not have personal knowledge of Ms. Chen's mental state, and has not introduced testimony by Ms. Chen to support this statement.

Third, Western Union moves to exclude the sentence beginning with: "Ms. Chen recognized 2 out of 3 . . ." and ending with ". . . everyone could see this marginalization." Again, Redwind lacks personal knowledge of Ms. Chen's motivation for recognizing only two of the three workers on the team. Moreover, to state that the statement was intended to marginalize her and that "everyone" understood that to be the purpose, is conclusory, speculative, and conjectural. As such, it should be excluded. Therefore, the court sustains Western Union's eighteenth objection to the Redwind Declaration.

19. Western Union further moves to exclude six additional portions of ¶ 16 as non-expert opinion evidence, argumentative, and because they are conclusory speculative, or conjectural. First, Western Union moves to exclude "By 'not acting Indian' . . ." through ". . . I did not 'act' like her created stereotype." Like the previous objection, Redwind attempts to speculate about the motivation behind Ms. Chen's alleged comments and behavior. Redwind lacks personal knowledge to opine about the mind set of Ms. Chen, so this portion of her declaration is conclusory, speculative, and conjectural. An identical analysis applies to Redwind's assertion that "She continued with her racially motivated harassment." Therefore, those portions of ¶ 16 are excluded.

Western Union also moves to exclude the following portions of ¶ 16 as argument: (1) "[M]y nose . . . is a racially protected feature of my people;" (2) "Ms. Chen marginalized my participation and socially excluded me from the team I was part of;" (3) from "When she failed to prove . . ." to ". . . through the appropriate channels to me;" and (4) "My reporting and opposing of Ms. Chen was a protected activity." The court will sustain each of these objections with one exception. Each

excerpt demonstrates conclusory and argumentative statements.  As such, they are largely inadmissible.  The one exception is Redwind's declaration that "I opposed her . . . practices on salesforce and through the appropriate channels available to me."  Although the court will exclude the phrase "discriminatory" before the term " work practices," the remainder of this sentence is admissible.  Therefore, Western Union's nineteenth objection is sustained in part.

20.  Western Union moves to exclude two sentences from ¶ 17 for violation of the Best Evidence Rule and the Hearsay Rule.  The first excerpt at issue reads as follows: "The code of conduct states that my immediate supervisor is an expected resource to turn to when events like what took place between Ms. Chen and I occur."  The court sustains Western Union's objection with respect to this sentence, as it attempts to prove the contents of a document in violation of the Best Evidence Rule.

The second objected-to portion of ¶ 17 reads as follows:  "Mr. Pinnegar didn't create a safe environment for me to report such serious issues as discrimination, like the code of conduct promised he would."  The court sustains in part and overrules in part Western Union's objection to this sentence.  The second clause, "like the code of conduct promised he would," violates the best evidence rule, as it is attempting to prove the contents of the Code of Conduct.  However, the first portion of that sentence "Mr. Pinnegar didn't create a safe environment for me to report such serious issues as discrimination," is not hearsay and does not violate the Best Evidence Rule.  As such, the court overrules in part Western Union's objection.

21.  Western Union moves to exclude the portion of ¶ 17 beginning with "[Pinnegar] labeled my attempt to report Ms. Chen's discrimination . . ." and ending, ". . . in regard to his segregating me from the team."  The court sustains in part and overrules in part this objection.  The first part of

FINDINGS & RECOMMENDATION - 17                                                    [RMD]

this excerpt, "[Pinnegar] labeled my attempt to report Ms. Chen's discrimination as an 'interaction issue,'" is admissible as a statement of the party-opponent. However, other portions of this paragraph are inadmissible. The phrase "like the code of conduct promised he would" violates the Best Evidence Rule. The remaining portion of this excerpt is argumentative, conclusory, speculative, and conjectural. Accordingly, this objection is sustained in part and overruled in part.

22. In its twenty-second objection, Western Union moves to strike eleven paragraphs from the Redwind declaration as hearsay. Some of these objections are addressed in other portions of Western Union's reply. Western Union does not explain why the objected-to material constitutes hearsay. To the extent identical hearsay objections are addressed in other portions of this opinion, those prior rulings control. However, the court overrules Western Union's twenty-second objection for lack of specificity.

23. Western Union moves to exclude the following portion from ¶ 18: "[Pinnegar] pointed to my engagement in protected activity as an example. He used my reporting and opposing of Judy Chen as his reference." The court overrules this objection, as Pinnegar's statement is a statement of a party opponent.

24. Western Union moves to exclude the portions of ¶ 19 which attempt to explain the contents of the Code of Conduct. Like Redwind's other attempts to explain the contents of the code of conduct, this violates the Best Evidence Rule. This objection is sustained.

25. Western Union moves to exclude ¶ 20 in its entirety under the Best Evidence Rule and the Hearsay Rule. This objection is sustained. In ¶ 20, Redwind describes the contents of her 2012 year-end review. The court has already ruled that Redwind may discuss her year-end reviews, but cannot describe the contents of the year-end reviews in their written form. Redwind does just that

FINDINGS & RECOMMENDATION - 18                                                    [RMD]

in ¶ 20.  She specifically testifies that the review "does not mention anything in writing about Mr. Vizcaino or 'interaction issues' . . . ."  She also describe the contents of the written 2012 year-end review.  This violates the Best Evidence Rule.  Thus, ¶ 20 is excluded.

26.  Western Union next moves to exclude all of ¶ 21.  Paragraph 21, like several other portions of the Redwind Declaration, contains quotes from the Code of Conduct Policy.  Similar to the other sections discussed above, ¶ 21 violates the Best Evidence Rule and will be excluded.

27.  Western Union moves to exclude the following phrases from ¶ 22:  "and his discrimination/marginalization," "blaming me for being discriminated against," "the discriminator, about why he is discriminating," and "as if I should submit to a male figure and be subservient to his demands allowing him to 'change my mind.'"  The court sustains this objection.  These statements, taken alone or as a group, are argumentative, conclusory, and speculative, and constitute non-expert opinion testimony.  Therefore, the court sustains this objection and will strike these phrases from ¶ 22.

28.  Western Union objects to the following portion of ¶ 23:  "I reported issues [*sic*] in ¶16-22 to the investigator and also in the online complaint in Exhibit 8."  The court has reviewed Exhibit 8, which appears to be an ethics complaint Redwind filed with Western Union.  The complaint is lodged against Pinnegar and Acocelli, but not Chen.  Moreover, Redwind's complaints against Chen do not appear in the complaint.  However, Western Union does not explain why this inconsistency is grounds for striking the entire sentence, and the court will not strike this excerpt in its entirety.  Instead, the court will strike only the portion regarding Exhibit 8.  Therefore, the court strikes "and also the online complaint in Exhibit 8."  The remainder of ¶ 23 is admissible.

FINDINGS & RECOMMENDATION - 19                                          [RMD]

29.  Western Union moves to exclude ¶¶ 23(c) and 23(d) for violating the Best Evidence Rule, for violating the rule against hearsay, because it constitutes opinion testimony, and because it is argumentative.  The court sustains in part and overrules in part this objection.  Paragraph 23(c) states that "Exhibit 10 is a true and correct copy of my notes from Ms. Eagle's calls with me."  This statement does not violate any of the rules of evidence.  Moreover, because Redwind created this document, she has personal knowledge of its original form and may attest to its accuracy.  The rest of ¶ 23(c), in which Redwind describes the contents of that document, violates the Best Evidence Rule and is excluded.

Similarly, ¶ 23(d) is stricken in part.  The court overrules Western Union's hearsay objection. Western Union does not contend King is not a Western Union employee, or that she was acting outside the scope of her employment.  Redwind may qualify Eagle's statements and King's statements as statements of a party opponent under Rule 802(d)(2) by soliciting testimony at trial regarding their employment with Western Union and the scope of that employment.  However, certain portions of this paragraph are inadmissible argument.  The court strikes "Evidence produced by the defendant" through the end of the paragraph, because they are not factual statements but argument unsuitable for inclusion in a declaration.

30.  Western Union moves to exclude all of ¶ 23(e).  The court will sustain this objection in part.  In the first sentence, Redwind attests that Exhibit 12 to her declaration is an accurate copy of a document she received during discovery, specifically, the "investigation conclusion of [Redwind's] grievance Ms. Eagle investigated from March 9 - March 25, 2013."  This is admissible.  However, the remainder of the paragraph is argumentative, conclusory, and speculative, and is not suitable for inclusion in a declaration.  Therefore, all of ¶ 23(e) is stricken except the first sentence.

FINDINGS & RECOMMENDATION - 20                                                    [RMD]

31.  Western Union moves to exclude all of ¶¶ 25 and 25(a).  The court sustains in part the Defendant's motion.  Paragraph 25 is admissible, as it does not violate the rules of evidence. Paragraph 25(a) is also admissible.  Redwind is competent to testify about her actions relating to the June 26, 2013 "participatory training" based on her personal knowledge.  Moreover, Acocelli's and Pinnegar's statements are statements of a party-opponent admissible under Rule 801(d)(2). Therefore, this objection is overruled.

32.  Western Union moves to exclude ¶ 25(b) in its entirety for lack of personal knowledge, because it is unsupported by testimony or other evidence, and because it is argumentative.  The court grants Western Union's motion in part and denies it in part.  Western Union is correct that the phrase "Ms. Chen's marginalization/discrimination/retaliation" is argumentative.  However, Western Union does not explain how the remainder of ¶ 25(b) is inadmissible.  Therefore, the court strikes the phrase "of my opposing Ms. Chen's marginalization/discrimination/retaliation."  The remainder of ¶ 25(b) is admissible.

33.  Western Union moves to exclude ¶ 26(a).  Paragraph 26(a) discusses Western Union employees who have won merit awards in consecutive years.  Defendant contends it should be stricken in its entirety under the Best Evidence Rule and because it is unsupported by testimony or other evidence, constitutes opinion, and is argumentative.  The court agrees in part.  The court strikes "since the awards are not discretionary, merit based" from the first sentence.  The following sentence is admissible.  However, from, "Exhibit 15 shows . . ." through the end of ¶ 26(a) is stricken, as it violates the Best Evidence Rule.  To the extent there are portions that do not violate the Best Evidence Rule, they are conclusory speculative, and argumentative.  Therefore, this objection is sustained in part.

34.  Western Union moves to exclude ¶¶ 27 and 28 in their entirety.  The court sustains in part Western Union's objection as to ¶ 27 and sustains in full its objection against ¶ 28.  With respect to ¶ 27, the objection is sustained as to the entire paragraph except for portions of the first sentence. The court will strike the word "discriminatory" from the first sentence as conclusory and argumentative.  However, the remainder of that sentence, which reads, "On August 9, 2013, I opposed Western Union's practices of giving an award based on an unfair advantage first, to Mr. Pinnegar and then, to Mr. Hunt," is admissible.   This portion of ¶ 27 expresses Redwind's motivation for "opposing" Western Union's practices and the fact of Redwind's opposition.   The remainder of ¶ 27 and all of ¶ 28 are excluded, as those paragraphs violate the Best Evidence Rule, and are conclusory and argumentative, and the Defendant's objection is sustained to that extent.

35.  Western Union moves to exclude ¶¶ 29(b) and (c) on the basis of hearsay. This objection is overruled.  Acocelli's out-of-court statements are statements of a party-opponent, and admissible under Rule 801(d)(2).

36.  Western Union moves to exclude ¶ 30 in its entirety.  The court overrules this objection, as Eagle is an employee of Western Union, and her statements constitute statements of a party-opponent.

37.  Western Union moves to exclude ¶ 31 in its entirety.  The court sustains this objection, and strikes ¶ 31 as argumentative and conclusory, and for violation of the Best Evidence Rule.

38.   Western Union moves to exclude ¶ 32(a) in its entirety.   The court sustains this objection, as ¶ 32(a) is conclusory and argumentative, and for violation of the Best Evidence Rule.

\ \ \ \ \

\ \ \ \ \

FINDINGS & RECOMMENDATION - 22                                                    [RMD]

39. Western Union moves to exclude ¶¶ 32(b) and (c). The court sustains this objection with respect to ¶ 32(b) and sustains in part and overrules in part the objection to ¶ 32(c). Paragraph 32(b) reads as follows: "**DISCOVERY:** the defendant produced no document showing Mr. McCarty investigated Ms. King." This paragraph, which is primarily a comment on Western Union's conduct during discovery, is not probative of Redwind's claims. To the extent it is probative of her claims, the probative value is outweighed by the prejudicial nature of the claim. Therefore, ¶ 32(b) is stricken.

However, not all of ¶ 32(c) is inadmissible. The court strikes all of ¶ 32 (c) except for the following: (1) "My email signatures usually include motivational quotes from the books I read, the quote Mr. McCarty refers to in his Declaration ¶ 10 was not made to him specifically, and the quote was a default quote for all sent emails at the time." (2) "The quote was not written by me but rather, by a Native American writer and is from a story book."; and (3) "As it can be seen, Exhibit 23 shows this same quote appearing in other emails that are <u>not made</u> to Mr. McCarty." The remainder of ¶ 32(c) consists of hearsay, conclusory statements, and argument. Therefore, all of ¶ 32(c) is stricken with the exception of the three sentences discussed above.

40. Western Union moves to exclude ¶ 33 in its entirety. The first two sentences of ¶ 33 are admissible. However, the court will exclude from "The warning was regarding . . ." through "I was able to use as evidence today." Therefore, this objection is sustained in part.

41. Western Union moves to exclude ¶¶ 33(e) and (f). The court will sustain this objection. Paragraph 33(e), in which Redwind discusses the "likes" she received on the Salesforce post which ultimately led to her written warning, is irrelevant to the issues in this case. Whether Redwind's colleagues actually liked or "electronically liked," her web postings are not relevant to whether that

posting was protected activity, whether it violated Western Union's policies, and whether Western Union's warning for the post was pretext for discrimination.  Therefore, this objection is sustained and ¶ 33(e) is stricken.

Paragraph 33(f) is relevant to the question of pretext.  However, the last sentence of ¶ 33(f) is stricken because Redwind lacks personal knowledge about the facts she asserts, and has failed to lay the foundation for her assertions.  Therefore, ¶ 33(e) and the last sentence of ¶ 33(f) are stricken from the Redwind Declaration.

42.  Western Union moves to exclude ¶ 33(h) in its entirety.  The court overrules this objection because the subject matter of this paragraph would e admissible at trial through Redwind's testimony..  To the extent McCarty's testimony is hearsay, it is attributable to Western Union and admissible under Rule 801(d)(2)

43.  Western Union moves to exclude ¶¶ 33(I) and 34.  The court overrules this objection in part.  Paragraph 33(I) primarily concerns Western Union's policies, or lack thereof, regarding first-time violations of other Western Union policies.  In it, Redwind states that "The defendant does not have any policy for the first time alleged violation . . . ."  The content of this evidence would be admissible at trial, given the proper foundation, under the hearsay exception for the absence of a record of a regularly-conducted activity.  FED. R. EVID. 803(7).

Paragraph 34, however, is largely admissible.  In ¶ 34, Redwind opines on her job duties and the circumstances under which she came up with business ideas she eventually posted to Salesforce. Redwind has personal knowledge of her job duties and may testify about them.  However, there are portions of ¶ 34 which are conclusory, argumentative, and without evidentiary foundation.  First, the court strikes the third sentence and part of the fourth sentence, from "The Defendant has a marketing

. . ." to "products and implements them[.]"  Second, the court strikes the last sentence of ¶ 34 because it is a non-expert conclusion without foundation.  However, the first sentence is admissible.  So is the excerpt from "I do not work in the product department. . . ." to ". . . copyright to my employer."

44.  Western Union objects to all of ¶ 35(a).  The court sustains this objection in part.  Redwind competent to testify as to most of ¶ 35(a) based on personal knowledge, and any hearsay may be attributed to Western Union and admissible under Rule 801(d)(2).  However, the last sentence, which reads, "Temporal proximity coupled with the . . . and the retaliatory warning of October 1st," is argumentative and is stricken.

45.  Western Union moves to exclude ¶ 36 in its entirety.  The court sustains the objection in part.  The first sentence is admissible.  However, the remainder of ¶ 36 is conclusory and argumentative, and lacks foundation.  Therefore, all but the first sentence of ¶ 36 is stricken.

46.  Western Union moves to exclude ¶ 37(d) in its entirety on the basis of hearsay.  The court overrules this objection.  To the extent this paragraph contains hearsay, the hearsay statements are admissible as statements of a party opponent under Rule 801(d)(2).

47.  Western Union moves to exclude ¶ 37(e) in its entirety.  The court sustains this objection in part.  The only inadmissible material in this paragraph is the last sentence, which is conclusory, argumentative, and contains non-expert opinion testimony.  Therefore, the last sentence of ¶ 37(e) is stricken.

48.  Western Union moves to exclude all of ¶ 37(I).  The court will sustain this objection in part.  Paragraph 37(I) contains statements attributable to Western Union.  However, beginning with

"The facts and Ms. Reynold's own testimony prove . . ." through the end of ¶ 37(I) are stricken as conclusory, argumentative, and non-expert opinion.

49.  Western union moves to exclude ¶ 37(j).  The court overrules this objection.  To the extent this paragraph contains out-of-court statements, those statements are attributable to Western Union and admissible under Rule 801(d)(2).

50.  Western union moves to exclude ¶ 37(k).  The court sustains this objection in part.  The first part of ¶ 37(k) is argumentative and conclusory, and is stricken.  However, the final clause of the paragraph, which reads "I filed a grievance with BOLI in February 2014" is admissible.  Western Union challenges the truth of this statement, as they contend the BOLI complaint was filed on March 5, 2014.  However, the court will not strike a portion of Redwind's declaration due to a factual dispute.  Redwind's BOLI charge appears in the evidentiary record, and the court will determine at a later time whether Redwind's testimony creates a genuine issue of fact given the timing and contents of the original BOLI charge.  Therefore, this objection is sustained in part.

51.  Western Union objects to ¶ 38 for lack of personal knowledge, hearsay, among other objections.   The court overrules this objection, as Western Union fails to meet its burden of explaining how its objections apply to ¶ 38.  Therefore, ¶ 38 is admissible.

52.  Western Union objects to ¶ 39 for lack of personal knowledge, and because it is hearsay, opinion testimony, conclusory, speculative or conjectural, and unsupported by testimony or other evidence.  Again, Western Union does not attempt to explain, except in conclusory fashion, how ¶ 39 violates the rules of evidence.  As a result, they do not carry their burden on the objection. Accordingly, the court overrules this objection and admits ¶ 39.

53. Western Union moves to exclude ¶ 40 in its entirety. The court sustains this objection and strikes ¶ 40 as hearsay and as a violation of the best evidence rule.

54. Western Union objects to ¶ 41 and moves to strike it in its entirety for lack of personal knowledge, and because it is conclusory, speculative, conjectural, and unsupported by testimony or other evidence. The court disagrees. Redwind has personal knowledge of the individuals assigned to her grievances. Therefore, this objection is overruled.

55. Western Union moves to exclude ¶ 42(a) for lack of personal knowledge and violation of the rule against hearsay. The court overrules this objection. "Mr. Vizcaino" is a Western Union employee, and his statements appear to involve matters within the scope of his employment, so they constitute statements of a party-opponent under Rule 802(d)(2).

56. Western Union moves to exclude all of ¶ 42(b). The court disagrees. Western Union couches its objection under the guise of "lack of personal knowledge, opinion, conclusory, speculative, or conjectural, unsupported by testimony or other evidence." However, in essence, the defendant merely objects to the truth of Redwind's statement. Therefore, this objection is overruled.

57. Western Union objects to ¶ 42(d) and argues it is non-expert opinion, conclusory, speculative, or conjectural, and unsupported by testimony or other evidence. The court sustains Western Union's objection in part. The first three sentences of ¶ 42(d) are admissible evidence because they are admissions by Western Union. However, the final two sentences are argumentative. Therefore, the court strikes the following from that paragraph: "If no Portland employee was present the defendant would have no need to also reference document WU697, but they did, which means it's also part of the answer according to law." (Emphasis original).

\ \ \ \ \

58. Western Union moves to exclude ¶¶ 43-46. The court will overrule this objection. Each of these paragraphs contains information about the organization of Redwind's work group. Western Union presents no reason why Redwind would not have personal knowledge about her co-workers or the organization of her work group. Moreover, they do no articulate how the information contained in ¶¶ 43-46 constitutes opinion testimony, or how these paragraphs are conclusory, speculative, or conjectural. Finally, it is not a requirement that all statements in a declaration be supported by other evidence and testimony. Therefore, this objection is overruled.

59. Western Union moves to exclude all of ¶ 47. The court will sustain this objection in part. The first six sentences of ¶ 47 are admissible. However, the remainder of ¶ 47 is argumentative, conclusory, and non-expert opinion. Therefore, all but the first six sentences of this paragraph are stricken.

60. Western Union moves to exclude ¶ 49(c) for hearsay, lack of personal knowledge, violation of the Best Evidence Rule, and because it is speculative, conclusory, conjectural, and unsupported by testimony or other evidence. Western Union also contends ¶ 49(c) should be excluded as argumentative. The court agrees. Paragraph 49(c) violates the Best Evidence Rule by attempting to prove the contents of an email sent from "Ms. Maya." Thereafter, Redwind states, "[t]he defendant redacted much of the conversation but based upon the content, if what is un-redacted is this bad, It can be reasoned that what is redacted within the same context must be damaging to the defendant and why they redacted this information from discovery." This is conclusory, speculative, and argumentative, and has no basis in law. Therefore, the court strikes ¶ 49(c) from the Redwind Declaration.

\\\\\

61. Western Union next moves to exclude ¶ 49(d) in its entirety. The court sustains this motion, as ¶ 49(d) contains no facts. It consists only of inferences Redwind has drawn from the evidence and her arguments based on those inferences. Therefore, the court excludes ¶ 49(d).

62. Western union moves to exclude all of ¶ 50. In ¶ 50, Redwind explains some of her answers to questions at deposition, particularly her answers to Defendant's questions about the injuries she suffered as a result of Western Union's alleged wrongdoing and whether those injuries can be separated from the stresses Redwind experiences from pursuing this litigation. Most of ¶ 50 consists of argument not suitable for inclusion in a Declaration. In addition, several portions of ¶ 50 include descriptions of Redwind's medical records which violate the Best Evidence Rule. However, several sentences are admissible. Accordingly, the court will exclude all of ¶ 50 except for the following: (1) "The Defendants continued unlawful activities subjected me to undue stress that led to physical health problems[.]" (2) "I will state for the record that my health issues were solely caused by the defendant[.]" (3) "Again, for the record the litigation process itself is not an undue stressor that negatively [a]ffects my health because I view the litigation process as my opportunity to seek justice[.]" and (4)"Exhibit 69 is a true and correct copy of the health summary along with the damages that have manifested in physical due to the undue stress." The rest of ¶ 50 is inadmissible, and is stricken.

63. In their final objection to the Redwind Declaration, Western Union requests that the court strike ¶ 51. Paragraph 51 consists of the heading "Retaliation qualifiers:", followed by a table articulating twenty different "protected activities," "adverse employment" actions taken in response to those allegedly protected activities, as well as "causal links" between the protected activity and the adverse action. Western Union contends this is unauthenticated demonstrative evidence. They

also argue the table is conclusory, argumentative, and contains hearsay. The court agrees with Western Union.

Federal Rule of Evidence 1006 speaks directly on the admissibility of demonstrative charts to prove the content of voluminous writings. It provides as follows:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

FED. R. EVID. 1006. Moreover, where a party wishes to rely on a demonstrative chart or summary, the proponent must "lay a foundation of fairness and accuracy" before the evidence may be admitted into evidence. *U.S. v. Walema*, 194 F.3d 1319, at *1 (1999) (Table).

Here, Redwind attempts to summarize and prove the contents of the record in this case. However, because this is a motion for summary judgment and not a trial, it is not inconvenient for the court to review the record, as appropriate and necessary, in considering Western Union's Motion for Summary Judgment. Because Redwind's chart does not serve the purpose articulated in Rule 1006 of remedying an inconvenience, the chart is not helpful to the court and is not admissible evidence.

Further, Redwind did not lay the foundation to show her chart was a fair and accurate representation of the evidence it intended to prove. Indeed, doing so would be nearly impossible, as she relies heavily on hearsay and portrays arguments and opinions as fact. As a result, the court will exclude the table featured in ¶ 51.

\ \ \ \ \

\ \ \ \ \

FINDINGS & RECOMMENDATION - 30                    [RMD]

*C. Objections to Documentary Exhibits.*

Western Union objects to nearly all of Redwind's documentary exhibits, primarily based Western Union's contention that Redwind's exhibits constitute inadmissible hearsay. The court sustains in part and overrules in part Western Union's objections.

1. Statements by Party Opponent.

The court already has discussed that the out-of-court statements of Western Union employees are admissible as statements of a party-opponent under Rule 801(d)(2). Therefore, the court will consider all statements by Western Union employees or agents other than Redwind contained in Exhibits 14, 16, 20-23, 25, 27, 28, 43, 45, 49, 51, 57, 59, 60, 61, 63, 67, 68, and 70-75, so long as those statements pertain to matters within the scope of the declarant's agency and employment. The court will also consider the portions of exhibit 64 which feature statements by Pinnegar. Moreover, the court has already discussed that exhibits containing the Western Union logo, trademarks, or official documents produced by Western Union for personnel or human resources reasons are statements of Western Union admissible under Rule 801(d)(2). Therefore, the court admits Exhibits 1, 2, 4, 5, 8, 9, 15, 19, 35, 38, 40, 50, 56, 62, and 66. However, the court excludes Exhibits 12, 17, 37, 39, 58, and 77. Each consists of out-of-court statements, and Redwind does not meet her burden of demonstrating that they fall within a hearsay exclusion or exception.

2. Public Records.

Defendants next object to exhibits 48, 77, and 78 as hearsay not subject to the "public records" hearsay exception. Redwind argues exhibit 48 is admissible because Western Union has already authenticated it by providing it in discovery. However, Western Union does not move to exclude exhibit 48 for lack of authentication; it contends the document is inadmissible hearsay.

Therefore, Redwind has not met her burden of establishing exhibit 48 may be presented in admissible form, and the court will not consider it on summary judgment. Moreover, Redwind does not describe what Exhibit 48 is or how it is probative of the issues in this case.

Redwind next contends exhibits 76 and 78 are admissible under the public records exception of Rule 803(8). Rule 803(8) provides that records and statements of a "public office" are admissible, regardless of hearsay, if:

> (A) it sets out:
>
>> (i) the office's activities;
>>
>> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>>
>> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Here, exhibit 78 is admissible under Rule 803(8), as it is clearly a "Complaint Dismissal memo" issued by the "Civil Rights Division – Bureau of Labor & Industries" in regards to a complaint filed by Redwind. The contents of the document demonstrate it is a document of an investigation and administrative adjudication of Redwind's BOLI complaint regarding Western Union's allegedly discriminatory actions. Similarly, exhibit 76 is the documentation of an "investigative interview" conducted by Civil Rights Division Interviewer Matthew Butler, the same investigator who wrote and signed the "Complaint Dismissal Memo" in exhibit 78. Therefore, exhibits 76 and 78 are admissible under Rule 803(8).

\ \ \ \ \

\ \ \ \ \

FINDINGS & RECOMMENDATION - 32                                              [RMD]

c.   Recorded Recollections.

Next, Western Union objects to exhibits 7, 10, 11, 18, 21 (pg 23), 26, 27 (pg. 5 and 43), 44, 58, and 65, and argue these exhibits are hearsay not subject to any exception.   Redwind disagrees, and contends these exhibits are subject to the hearsay exceptions contained in Rules 803(1), (3), and (5).   The court sustains in part and overrules in part Western Union's objections.

Rule 803(1) provides that hearsay is admissible if it is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."   Similarly, Rule 803(3) allows a court to admit a hearsay "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health).   Rule 803(5) also allows for certain documents regarding a witness's recollection to be admitted into evidence.   That rule provides that hearsay in the form of "recorded recollection" is admissible so long it is a record that:

> (A) is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately;
>
> (B) was made or adopted by the witness when the matter was fresh in the witness's memory; and
>
> (C) accurately reflects the witness's knowledge.

FED. R. EVID. 803(5).   Recorded recollections "may be read into evidence but may be received as an exhibit only if offered by an adverse party."   *Id.*   Moreover, on summary judgment, the threshold for admitting notes or diary entries created by the proponent is low.   *Frasier*, 342 F.3d at 1037.   In *Fraser*, the Ninth Circuit reversed a district court's decision to exclude a witness's diary on the basis of hearsay.   *Id.*   The court explained that the court's focus on summary judgment should be the "contents" of the exhibit, and not its form.   *Id.*   The court then observed that the diary or its contents

"could be admitted into evidence at trial in a variety of ways," including as a recorded recollection, through direct testimony of the declarant based on personal knowledge, or to refresh the testifying witness's memory. *Id*. Therefore, the diary was admissible.

Here, exhibits 7, 10, 18, 26 (pg 5), 27 (pg 5 and 43), 58, and 65 are notes and recollections Redwind prepared. Most of them describe events relevant to this case and meetings between Redwind and Western Union employees. The notes themselves are hearsay, as they are out-of-court statements offered for the truth of the matter asserted, and thus inadmissible. However, to the extent these notes describe factual events or are evidence of present-sense impressions of those events, they are admissible under the Federal Rules of Evidence and *Fraser*. Moreover, to the extent these notes contain "double hearsay" in the form of documenting additional out-of-court statements by Western Union employees, those statements are admissible as statements by a party-opponent under Rule 801(d)(2).

The court also concludes exhibit 21, page 23, is not hearsay. Page 23 of exhibit 21 consists of the very end of Redwind's email signature. It includes her address, her phone and fax numbers, and the following quote "My will does not bend and it does not break; it is an evolving fire that burns those who try to encroach and warns those who are wise enough to keep a safe distance. May it serve as a light to those lost within the darkness. -Arcane Ravenwolf-." During McCarty's review of King's ethics investigations, McCarty said he found this quote "vaguely threatening" and thought the quote confirmed the concerns Pinnegar and Acocelli were raising about Redwind's communication problems. Although the quote constitutes an out-of-court statement, it is clearly not offered to prove the truth of the matter asserted. Whether Arcane Ravenwolf, or Redwind for that matter, ascribes to the philosophy contained in the quote is not particularly relevant to her claims.

FINDINGS & RECOMMENDATION - 34                                                      [RMD]

Instead, this evidence is offered to show, consistent with Redwind's arguments on summary judgment, that this quote is attached to her signature on all emails, and was not intended to target one Western Union employee in particular. Therefore, this portion of Western Union's objections is overruled, and the court will consider exhibit 21, page 23, on summary judgment.

          d. Authentication.

The fourth group of exhibits Western Union moves to exclude consists of exhibits 4, 5, 13, 42, 52, and 69 (pages 1-12). Western union argues these exhibits, particularly the demonstrative exhibits featured in exhibits 13 and 42, are inadequately authenticated under Rule 901.

Exhibit 4 appears to be the Western Union Code of Conduct. Redwind contends this document has been sufficiently authenticated because Western Union produced this document in discovery. The court agrees with Redwind. "Documents produced by a party in discovery are deemed authentic when offered by the party-opponent." *Elston v. Toma*, No. CV 01-1124-BR, 2004 WL 1048132, at *3 (D. Or. April 15, 2004) (citing *Orr,* 285 F.3d at 777 n. 20). Therefore, exhibit 3 is sufficiently authenticated.

Exhibit 5 appears to be the "Western Union Company Domestic Tuition Assistance Plan" effective January 1, 2008. Redwind contends she obtained this document from Western Union's website. The court disagrees with Defendant that Exhibit 5 is inadmissible. Particularly when reviewing challenges to authentication on summary judgment, the court looks to whether the contents of the document may be admissible at trial. Here, Redwind has personal knowledge of how she obtained this document, and given its origin at the Western Union website, it would not be difficult for her to authenticate this exhibit with her own testimony or the testimony of another

Western Union employee.  Because the contents of Exhibit 5 are admissible, the court will consider it on summary judgment.

Exhibits 13 and 42 are tables created by Redwind to explain two facets of her job.  Exhibit 13 appears to be a list of tasks assigned to Redwind by her managers, descriptions of those tasks, whether they were completed, and how long each task took.  Exhibit 42 is a table with four columns which explains Redwind's salary each year between 2008 and 2016.  The table includes a separate column which provides what her salary would be "without pay discrimination."  The final column contains the difference between Redwind's actual salary and the alleged salary without discrimination.

Western Union contends Redwind fails to show these tables are a "fair and accurate" depiction of the original evidence.  The court agrees in part.  Again, the court must analyze whether the content of the evidence would be admissible at trial.  Redwind is competent at trial to testify regarding the tasks assigned to her by her managers and her yearly salary.  Therefore, the court will consider Exhibits 13 and 42 to the extent the demonstrative exhibits reflect those facts.  However, Redwind does not indicate from where she derived the "salary without pay discrimination" data. Without citation to the original document containing these salaries to which Redwind is allegedly entitled, the demonstrative nature of Exhibit 42, column 3, is not helpful to the court.  As such, the court will not consider columns 3 and 4 of Exhibit 42 headed "Salary without Pay Discrimination" and "Salary lost each year because of pay discrimination."  Moreover, the court will not consider the "Running Tally of Pay Discrimination damages" at the bottom of the chart in exhibit 42.

Exhibit 52 is a table featuring the names of Western Union employees and what appear to be performance statistics.  Redwind testifies in her Declaration that this document is "a true and

correct copy of the Excel file shared with all employees, like myself, about their year-end net new agent count." (Dkt. No. 155 ¶ 7.) Here, Western Union does not meet its burden of showing the content of Exhibit 52 would be inadmissible at trial. They do not argue regarding the source of Exhibit 52 or question Redwind's personal knowledge of its contents. This objection is overruled.

Finally, Exhibit 69 appears to be Redwind's medical records from doctor visits between September 2014 and September 2015. Again, Western Union does not meet its burden of demonstrating the contents of these medical records would be inadmissible at trial. Redwind is fully competent to testify regarding her medical problems, and could testify to those facts. Moreover, Redwind could call an employee of her doctor's office to authenticate the medical records at issue. Accordingly, the court will consider Exhibit 69 on summary judgment.

II.  Redwind's Objections.

Redwind objects to portions of the declarations Western Union introduced in support of its motion for summary judgment. She also moves to strike exhibits attached to those declarations. Western Union argues Redwind's objections are untimely because she filed them well after briefing was closed on Western Union's Motion for Summary Judgment. It also argues that even if the court considers Redwind's objections, they lack foundation and should be overruled. The court will first address whether Redwind's objections are timely and thereafter, consider the merits of Redwind's objections.

A.  Timeliness.

Western Union argues that Redwind's evidentiary objections are untimely under Local Rule of Civil Procedure 56-1(b). Western Union filed its Motion to Dismiss and evidence in support on July 27, 2015. (Dkt. No. 95-102.) Redwind sought two extensions to file her Response, which

FINDINGS & RECOMMENDATION - 37                                    [RMD]

Redwind ultimately filed on November 25, 2015. (Dkt. No. 109, 141,146-148.) On December 11,

2015, Western Union filed its response and objections to Redwind's evidence. (Dkt. No. 149.) Just

two days later, Redwind filed a motion for an extension of time to respond to Western Union's

evidentiary objections, which the court granted. (Dkt. No. 151, 153.) On December, 28, 2015,

Redwind filed her sur-reply to Defendant's evidentiary objections and her own objections to Western

Union's evidence.

Local Rule 56-1(b) provides:

**Evidentiary Objections**

Rather than filing a motion to strike, a party may assert evidentiary objections in its
response or reply memorandum.  Evidentiary objections in a response or reply
memorandum are subject to the certification requirements of LR 7-1(a).  If an
evidentiary objection is raised in the non-moving party's response memorandum, the
moving party may address the objection in its reply memorandum; the non-moving
party may not file further briefing on its evidentiary objection.  If an evidentiary
objection is raised by the moving party in its reply memorandum, the non-moving
party may file a surreply memorandum pursuant to this subparagraph with seven (7)
days addressing only the evidentiary objection; the moving party may not file further
briefing on its evidentiary objection.  If a party asserts an evidentiary objection in a
motion to strike evidence, no reply memorandum is permitted.  Unless otherwise
ordered by the court, any oral argument as to evidentiary objections will be scheduled
for the same time as the summary judgment motion.

The court concludes that LR 56-1 does not render Redwind's objections untimely.  The rule provides

that if a movant files objections as part of its reply in support of summary judgment, the nonmovant

has seven days to respond.  However, LR 56-1 does not otherwise set any deadlines or time

limitations on when evidentiary objections are due.  Instead, the rule is ambiguous at best.

Moreover, Western Union does not establish it was prejudiced by Redwind's delay in filing her

objections.  Therefore, the court declines in this instance to overrule Redwind's objections solely on

the basis of untimeliness.

Western Union also argues that Redwind's arguments must be filed within the time allowed for the non-moving party's response to the motion for summary judgment. In support they cite *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118-19 (E.D. Cal. 2006). However, *Burch* is not binding authority in this district, and Western Union does not demonstrate that the local rules for this district are the same or similar to those for the eastern district of California, such that the court should adopt the *Burch* reasoning. The court, therefore, will consider the merits of Redwind's evidentiary objections.

    *B. Objections to Exhibits*.

Redwind objects to exhibits attached to each of Western Union's evidentiary declarations for a variety of reasons. Defendants argue Redwind's objections are inapplicable to strike their exhibits, and that most of Redwind's objections appear to focus on the weight the court should afford to the evidence at issue. The court will address each objection in turn.

    1. Exhibit 1 to the Falcone Declaration.

Redwind first objects to Exhibit 1 to the Falcone Declaration and argues that it inaccurately reflects the job description for her position at Western Union. The court declines to strike this exhibit. Although Redwind frames her argument as relevancy, she primarily argues that the court should not afford the exhibit much weight. At summary judgment, the court does not weigh evidence. Instead, the court is bound to consider the entire record, and deny summary judgment if the nonmoving party demonstrates a genuine issue of material fact. Therefore, the court overrules this objection.

\ \ \ \ \

\ \ \ \ \

### 2. Exhibits to the Vega Declaration.

Redwind objects to Exhibits 1 and 2 to the Vega Declaration. She argues both are irrelevant, and that Exhibit 2 is inadmissible hearsay. The court disagrees. Both exhibits are relevant to Western Union's argument that it had a legitimate, nondiscriminatory reason for issuing Redwind the October 1, 2014 "Warning" (the "Warning") for Redwind's alleged violation of the Western Union intellectual property and antitrust policies. Regarding Redwind's hearsay argument, Exhibit 2 would be admissible at trial as a record kept in the regular course of business under Rule 803(6). Accordingly, the court will consider Exhibits 1 and 2 to the Falcone Declaration.

### 3. Exhibits to the Pinnegar Declaration.

Redwind objects to Exhibits 1, 2, and 6 to the Pinnegar Declaration. The court overrules all three objections. As to Exhibit 1, Redwind argues it is irrelevant because it is supported by false statements. Redwind does not raise a cognizable argument to strike Exhibit 1 because her argument is aimed primarily at the weight the court should afford this evidence. Thus, this objection is denied.

Redwind objects to Exhibit 2 as irrelevant. The court disagrees. This evidence is relevant background information in this case, particularly to prove that Redwind raised concerns about her pay and her contention that she was subject to discrimination. Redwind also objects to Exhibit 6 on relevancy grounds. The court declines to strike Exhibit 6, as it is relevant background information regarding the online postings which led to the Warning. Accordingly, this objection is overruled.

### 4. Exhibits to the Acocelli Declaration.

Redwind objects to Exhibit 1 and Exhibits 3-8 of the Acocelli Declaration. She objects to Exhibit 1 as "sham testimony" which contradicts other evidence. The court declines to strike Exhibit 1, as Redwind fails to cite the allegedly contradictory testimony, and fails to cite authority for the

proposition that the "sham affidavit" rule may be used to strike an exhibit to a declaration, and fails to demonstrate how the rule applies to this particular testimony. This objection is overruled.

Redwind next objects to Exhibits 3-8. The court cannot discern the nature of Redwind's objection, but to the extent she objects to Exhibit 5 on hearsay grounds, the court overrules that objection. Exhibit 5 is the "coaching memorandum" which Western Union issued to Redwind regarding her "professional judgment and interpersonal skills." This is not hearsay, as Western Union will be able to introduce the content of Exhibit 5 under Rule 803(6). Because Exhibit 5 is admissible, the court overrules Redwind's objection to Exhibits 3, 4, and 6-8 because they are "being used . . . to support Exhibit 5." Redwind does not raise a legally sufficient justification for striking these exhibits, and the court overrules her objection.

> 5. Exhibits to the McCarty Declaration.

Redwind objects to Exhibits 6 and 11 as irrelevant and objects to Exhibit 12 as inadmissible hearsay. The court overrules all three objections. Exhibit 6 is relevant as background information regarding Redwind's complaints of pay discrimination and her allegation that Western Union's human resources department was "negligent" in investigating her complaints. It is also relevant to rebut Redwind's argument that Western Union ignored and otherwise minimized her complaints. Exhibit 11 is also relevant to the issues in this case. Specifically, Exhibit 11 is relevant to show that Redwind had knowledge of the Western Union antitrust policy before she posted the allegedly violative material on social media websites.

Finally, Exhibit 12 is not hearsay. Western Union will be able to introduce the content of Exhibit 12 through McCarty's testimony at trial, likely as a business record under Rule 803(6). Redwind's remaining arguments are not legally sufficient to justify striking the exhibits in question.

8. Exhibits to Anthony Declaration.

Redwind objects to Exhibits 1-6 of the Anthony Declaration. She objects to Exhibits 1-4 on relevancy grounds. However, she does not content they are irrelevant because they are not probative of an issue in this case, but because the documents are not what Western Union says they are. Redwind is, in essence, arguing the court should not give these exhibits any evidentiary weight. The court does not weigh the evidence on summary judgment. Thus, this objection is overruled.

Redwind next objects to Exhibits 5 and 6 because they violate of the Best Evidence Rule. The court disagrees. Photocopies are sufficient to satisfy the rule's requirements. Further, Redwind's argument that this exhibit should be inadmissible because the dates on the signature line of the documents have been changed is unavailing, as she cites no legal authority to support her argument or how different signature lines affect the exhibit's admissibility. Therefore, this objection is overruled.

C. *Objections to Declaration Testimony*.

Redwind raises ninety-one additional objections to Western Union's remaining evidence. Western Union again argues that Redwind's arguments are misplaced and do not demonstrate the inadmissibility of Western Union's testimonial declarations. Largely, Western Union is correct, and the court overrules most of Redwind's objections. However, some of her hearsay objections should be sustained.

1. Insufficient Objections.

Before the court addresses Redwind's objections based on hearsay and relevance, the court is compelled to make observations on Redwind's more common objections. First, the court overrules Redwind's lack of personal knowledge objections. Each statement to which Redwind

objected for lack of personal knowledge was made about the declarants' employment and events which occurred during the scope of that employment. Each of these declarants is competent to testify, based on personal knowledge, about events they perceived or participated in during the scope of their employment. Accordingly, Redwind's personal-knowledge objections are overruled.

Redwind also objects to many declaration excerpts as violative of the Best Evidence Rule. However, none of the objected-to material is introduced to prove the contents of a document. Without exception, these statements testify to a decision that the declarant made which were later memorialized in written form. Therefore, Redwind's objections based on the Best Evidence Rule are overruled.

Redwind objects to many portions of the evidentiary declarations because they contain "sham" testimony. To exclude testimony under the "sham" affidavit rule, the opponent must point to sworn testimony predating the declaration which directly contradicts the declaration testimony. *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). Redwind fails to do so. Some of her objections rely on contradictory testimony of other witnesses, others rely on testimony that is not directly contradictory. Overall, Redwind's objections based on the sham affidavit rule are overruled.

The court also overrules Redwind's objections for "conclusory, speculative, and conjectural" testimony. Upon review of the record, none of the objected-to declaration excerpts are conclusory, speculative, or conjectural. Therefore, these objections are overruled.

Finally, Redwind raises objections because certain declaration excerpts lack support by other evidence, and because they are misleading. Redwind does not produce authority for her contention that either constitutes legally sufficient grounds for striking declaration testimony. Redwind argues that under Rule 56, a declarant must support his or her testimony by "citing to particular parts of

material in the record . . . ."  This portion of Rule 56 refers to the necessity of including citations to the record to support statements of fact in a party's brief.  A declarant submitting a testimonial declaration need not cite to additional evidence in the record to support his or her testimony, so long as that testimony is based on personal knowledge and not excludable under another rule of evidence. Therefore, Redwind's objections based on "misleading" evidence and evidence that is not supported by citations to the record are overruled.

    2. Individual Objections.

   Redwind's remaining objections to Western Union's declaration testimony are premised almost exclusively on hearsay and relevance.  The court will now address each objection to the extent it was not addressed above.  Those objections which are not specifically mentioned below are addressed above in the "Insufficient Objections" section.

    a. Declaration of Luis Felipe Rodriguez Vega

   1. Redwind objects to portions of ¶ 4 for relevance.  The court overrules this objection, as the excerpt to which she objects is relevant to Western Union's argument that it had legitimate, nondiscriminatory reasons for taking any employment or personnel actions.

   2. Redwind objects to ¶ 5 on the basis of hearsay, but the court overrules this motion because this excerpt is admissible as a statement of the declarant's then-existing state of mind under Rule 803(3).

   3. Redwind objects to ¶ 6 on the basis of hearsay.  The court overrules this objection, as the objected-to matter is a statement of party opponent.  Further, there are no out-of-court statements at issue and, to the extent this paragraph contains hearsay, they are statements of the declarant's then-existing state of mind.

FINDINGS & RECOMMENDATION - 44           [RMD]

4.   Redwind objects to portions of ¶¶ 7-9 on the basis of hearsay.  The court overrules this objection because the material cited in Redwind's objection does not put at issue an out-of-court statement.  To the extent Vega's testimony contains hearsay statements, they are statements of his then-existing state of mind admissible under Rule 803(3).

b.   Declaration of Craig Pinnegar.

8.   Redwind objects to ¶ 6 of the Pinnegar Declaration on the basis of hearsay.  The court overrules this objection, as Pinnegar's testimony does not put an out-of-court statement at issue.  He is merely explaining the organizational constraints of his job at Western Union.

9.   Redwind objects to ¶ 7 on the basis of relevance.  The court overrules this objection, as the objected-to material is relevant to Western Union's argument that it had legitimate, nondiscriminatory reasons for taking personnel actions against Redwind.

12.   Redwind objects to ¶ 12 on the basis of hearsay.  The court overrules this objection, as the objected-to material contains no out-of-court statement.  Accordingly, it is not hearsay under Rule 801(c).

14.   Redwind objects to ¶¶ 14 and 15 on the basis of relevance.  The court overrules this objection, as this material is relevant to Western Union's argument that Redwind suffered no adverse employment action.

15.   Redwind objects to the following excerpt from ¶ 16:  "I identified some opportunities for growth for Ms. Redwind . . . cited examples where I felt Ms. Redwind could improve her interactions with colleagues."  The court overrules this objection.  Pinnegar offers his out-of-court statements regarding communications he had with Redwind wherein he "identified" areas of improvement and "opportunities for growth."  The content contained in this hearsay statement is

FINDINGS & RECOMMENDATION - 45                                        [RMD]

admissible because it is contained in Redwind's 2012 year-end review, which is admissible as a business record under Rule 803(6).

16.    Redwind objects to the following portion of ¶ 16(a) as inadmissible hearsay:  "Ms. Redwind seemed to be clashing with another colleague, Territory Sales Executive David Vizcaino. . . . Mr. Vizcaino raised concerns to me about the way Ms. Redwind spoke to him, saying he felt it was 'condescending,' 'abrupt,' . . . and 'short.'  Other peers shared similar concerns with me about Ms. Redwind's communications."  The court will sustain this objection in part.  The first sentence does not put at issue an out-of-court statement.  To the extent it does, it is admissible as a statement of Pinnegar's then-existing state of mind.  However, the remainder of this excerpt is inadmissible hearsay.  Pinnegar testifies to Vizcaino's and others' out-of-court statements about Redwind's behavior, and Western Union does not cite a hearsay exclusion or exception which applies to render this testimony admissible.

17.    Redwind objects to ¶ 16(b) on the basis of hearsay.  The court sustains this objection in part.  To the extent this material contains Redwind's statements, those are admissible as statements of a party-opponent under Rule 801(d)(2).  However, Pinnegar's testimony about Wendle Raping's email contain out-of-court statements admitted to prove the truth of the matter asserted, and Defendants do not articulate an applicable hearsay exclusion or exception.  Therefore, this objection is sustained and Pinnegar's testimony in ¶ 16(b) about Wendle Raping's email are stricken.

18.    Redwind objects to ¶ 17 on the basis of hearsay.  The court overrules this objection, as ¶ 17 does not put an out-of-court statement at issue.  To the extent it does, it is a statement of Pinnegar's then-existing state of mind.

19.  Redwind objects to the following portion of ¶ 19: "These included her interactions with peers, in light of the reports I had received about Ms. Redwind being 'condescending,' 'abrupt,' or 'short.'"  The court sustains this objection.  Pinnegar testifies to the out-of-court statements of unnamed declarants that Redwind was condescending, abrupt, or short.  Western Union does not articulate a non-hearsay purpose for which this testimony is offered or articulate an applicable hearsay exclusion or exception.  Therefore, this objection is sustained.

21.  Redwind objects to ¶ 20 as hearsay.  The court overrules this objection.  To the extent Redwind objects to Pinnegar describing the guidelines of "stack-ranking" policies, which would be out-of-court statements, those policies are admissible as business records under Rule 803(6).  Accordingly, this objection is overruled.

23.  Redwind objets to ¶ 28 on the basis of relevance.  The court overrules this objection, as this material is probative as authentication of Western Union's evidence.

24.  Redwind objects to ¶ 29 on the basis of hearsay.  The court overrules this objection.  Pinnegar's testimony is not offered to prove the truth of the out-of-court statement, but to show he had knowledge of Redwind's Salesforce postings and his motive for issuing her the Warning.  Therefore, this material is admissible, and Redwind's objection is overruled.

28.  Redwind objects to ¶ 30 on the basis of hearsay.  The court overrules this objection.  This testimony does not put an out-of-court statement at issue.

29.  Redwind objects to ¶ 35 on the basis of hearsay.  Pinnegar's testimony in ¶ 35 does not put at issue an out-of-court statement.  To the extent it does, his testimony is admissible as proof of Pinnegar's motive and intent under Rule 803(3).

\ \ \ \ \

c.  Declaration of Randall Acocelli.

30.  Redwind objects to ¶ 4 of the Acocelli Declaration on the basis if hearsay and relevance. The court overrules this objection.  Acocelli's testimony does not offer an out-of-court statement for the truth of the matter asserted.  He is describing a letter of recommendation he wrote for Redwind. Moreover, this evidence is relevant to rebut Redwind's argument she was subject to an adverse employment action and a discriminatory environment.

31.  Redwind objects to ¶ 7 on the basis of hearsay.  The court overrules this objection, as any out-of-court statements in the objected-to material are either statements of a party-opponent under Rule 801(d)(2) or statements of the declarant's then-existing mental state under Rule 803(3). Therefore, these portions of ¶ 7 are admissible.

32.  Redwind objects to ¶ 9 on the basis of hearsay.  The court overrules this objection, as the objected-to material consists of the declarant's then-existing state of mind.

35.  Redwind objects to ¶ 13 on the basis of hearsay.  The court overrules this objection, as the objected-to material does not put in issue an out-of-court statement.  Therefore, ths objection is overruled.

36.  Redwind objects to ¶ 15 on the basis of hearsay.  The court overrules this objection, as the objected-to material does not put in issue an out-of court statement.  To the extent it does, those statements are admissible under Rule 803(3).

d.  Declaration of Carla Anthony.

37-39 & 41.  Redwind objects to ¶¶ 6, 14, 16, and 23 on the basis of hearsay.  The court overrules this objection.  To the extent this testimony contains hearsay, those statements are admissible under the business records exception of Rule 803(6) upon a proper foundation at trial.

Anthony sufficiently lays the foundation for application of this exception by testifying these documents were produced and kept in the regular course of business. Anthony is competent to offer this foundational testimony, as the production and maintenance of human resources and personnel documents is within her personal knowledge as the director of human resources for Western Union.

> e.  Declaration of Marcus McCarty.

42.  Redwind objects to ¶ 5 of the McCarty Declaration on the basis of hearsay. The court overrules this objection, as the objected-to material does not put at issue an out-of-court statement.

44.  Redwind objects to ¶ 8 on the basis of hearsay. The court overrules Redwind's objection, as she fails to sufficiently explain how her objection applies to strike the material at issue.

45.  Redwind objects to ¶ 9 on the basis of hearsay. The court overrules this objection, as any hearsay objection in her forty-fifth objection are statements of a party-opponent under Rule 801(d)(2).

46.  Redwind objects to ¶ 11 on the basis of hearsay. The court overrules this objection because Redwind fails to adequately explain how her objection applies to the matter at issue.

47.  Redwind objects to ¶ 10 on the basis of hearsay. The court overrules Redwind's objection, as the objected-to material does not put at issue an out-of-court statement. To the extent it does, those are statements of the declarant's then-existing state of mind.

48.  Redwind objects to ¶ 12 on the basis of hearsay. The court overrules this objection, as the statements at issue in ¶ 12 are admissible as statements of a party-opponent under Rule 801(d)(2). Therefore, this objection is overruled.

49.  Redwind objects to ¶ 15 on the basis of hearsay. In particular, Redwind objects to Acocelli's testimony that he spoke with Redwind about "three separate email responses from Ms.

Martinez explaining why Ms. Martinez believed the email was appropriate feedback to Ms. Redwind about how Ms. Redwind should communicate with colleagues about an issue that had arisen with an agent in Mexico." The court sustains this objection to the extent McCarty's testimony describes Ms. Martinez's out-of-court statements. They are introduced to demonstrate Ms. Martinez's response was appropriate, and that Martinez and other Western Union managers viewed Redwind's interpersonal and communication skills as lacking. Western Union does not articulate a hearsay exclusion or exception that applies. Therefore, the court will sustain this objection.

50. Redwind objects to ¶ 16 on the basis of hearsay. The court overrules this objection. The content of the out-of-court statements in ¶ 16 is admissible because the report of McCarty's investigation report is admissible as a business record produced and maintained in the regular course of business. McCarty is competent to testify as to the foundational evidence as general counsel to Western Union.

51-52. Redwind objects to ¶ 18 on the basis of hearsay. The court overrules this objection, as the objected-to statements are admissible as statements of a party opponent under Rule 801(d)(2).

53. Redwind objects to portions of ¶ 19 on the basis of hearsay and relevance. The first objected-to passage is admissible as a statement of a party-opponent, and is relevant to rebut Redwind's contention that Western Union's Human Resources Department did not sufficiently investigate her complaints. The third passage to which Redwind objects, from "In that email exchange . . ." to "many of my questions" is not hearsay, as it does not put at issue an out-of-court statement. McCarty does not explain the content of his "additional questions," but explains his motive for asking them. This testimony is also relevant to Western Union's argument it conducted a proper investigation of Redwind's complaints.

Redwind's second objection also is overruled. McCarty testifies: "I truthfully responded that the questions she raised were being 'thoroughly investigate[d],' but that it was not the 'normal practice of the Ethics Office to provide that much detail to any of the participants in an investigation' regarding 'past and current investigations." Because of his position, McCarty would have personal knowledge of the manner in which Defendant's Ethics Office investigates and responds to complaints, and how it provides information about those investigations. Therefore, this objection is overruled.

54. Redwind objects to ¶ 20 on the basis of relevancy and hearsay. This objection is overruled. To the extent it contains hearsay, it is admissible as a statement of a party-opponent. Moreover, this material is relevant to explain McCarty's actions investigating Redwind's ethics complaints.

55 & 56. Redwind objects to ¶ 22 and 23 on the basis of hearsay. The court overrules this objection, as the objected-to material does not contain an out-of-court statement.

57-97. The remainder of Redwind's objections consist of motions to strike portions of Western Union's Motion for Summary Judgment. The court overrules each objection. Evidentiary objections are a procedural vehicle to limit the evidentiary record and exclude inadmissible evidence. They are different from the legal and factual arguments a party presents in memorandum in support of or opposition to a motion for summary judgment. Redwind does not cite any legal authority for her argument that portions of a legal brief may be stricken for violating the rules of evidence. Therefore, Redwind's objections 57-97 are overruled.

\\\\\

\\\\\

*Conclusion*

For the aforementioned reasons, Western Union's evidentiary objections are SUSTAINED in part and OVERRULED in part.  Redwind's evidentiary objections are also SUSTAINED in part and OVERRULED in part, and her Motion (ECF No. 156) to Strike Evidence is GRANTED in part and DENIED in part.

IT IS SO ORDERED

This 2nd day of May, 2016.

        /s/ John V. Acosta        
        JOHN V. ACOSTA
        United States Magistrate Judge